IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| FOX G. ROCKEFELLER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 24-00692-CV-W-BP ) |
| SOCIAL SECURITY ADMINISTRATION, | ) ) |
| Defendant. | ) ) |

## ORDER AND OPINION AFFIRMING COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's decision denying his application for disability benefits under Title II. For the following reasons, the Commissioner's decision is **AFFIRMED**.

## I. BACKGROUND

Plaintiff was born in January 1979, completed approximately one year of college, and has prior work experience in an IT server support position. He originally filed his application for benefits in November 2019, alleging an onset date of November 21, 2019. Plaintiff's application was first denied on June 22, 2021, but the decision was reversed and remanded for further proceedings by the Middle District of Florida on November 23, 2023. His most recent hearing took place on February 1, 2024, and his claim for benefits was again denied on February 26, 2024.

The ALJ determined Plaintiff suffers from several physical and emotional/psychological conditions, including fibromyalgia, major depressive disorder, and bipolar disorder. (R. at 566.) During the first hearing, Plaintiff also discussed issues related to his back, (R. at 53-55), which he described as causing him pain "24/7." (R. at 53.) There was also documentary evidence about his back condition, and Plaintiff's representative referred to it during the second hearing. (R. at 611.)

The ALJ found Plaintiff retains the residual functional capacity ("RFC") to perform less than the full range of light work. Specifically, he is able to lift or carry less than ten pounds frequently and twenty pounds occasionally, stand or walk (with normal breaks) for a total of six hours a day, sit for six hours a day, and "perform frequent gross and fine manipulation." (R. at 569.) He requires "simple and unskilled work which entails simple, routine, repetitive tasks" because of his limitations on concentration but retains the ability to understand, remember, and carry out job instructions related to such tasks. (R. at 569.) Finally, the ALJ determined that Plaintiff "can respond appropriately to supervisors and coworkers and work situations[,]" but he "should avoid stressful situations (i.e., frequently working directly with coworkers in a team [or] with the public; working with coworkers and supervisors where frequent interpersonal interaction or discussion is required; or working at a strict production rate pace)." (R. at 569.) Based on testimony from a Vocational Expert ("VE"), the ALJ concluded Plaintiff could not perform his past work but could perform work as a marker, a routing clerk, and a housekeeping cleaner. (R. at 583.)

Plaintiff argues the ALJ's decision should be reversed because he committed multiple errors. The Commissioner opposes reversal, and the Court resolves the parties' arguments below.

## II. DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole." *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. *E.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the

Commissioner's conclusion. . . . As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because we would have decided the case differently." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citations omitted).

### A. Whether the RFC is supported by substantial evidence

Plaintiff presents numerous arguments regarding the RFC determination. The Court will address them separately.

**1. The ALJ's treatment of reports from medical professionals**

Plaintiff first argues the ALJ erred because he ascertained Plaintiff's RFC after concluding none of the medical opinions were entitled to controlling weight, which meant the RFC was not reflected in or supported by any medical opinion. According to Plaintiff, this meant the ALJ utilized his own medical judgment and reversal is required. The Court disagrees.

The ALJ determined that components of each opinion were "unpersuasive," (*e.g.* R. at 578), but he also found portions of some opinions were persuasive. For example, the ALJ agreed with the State psychiatric consultants that Plaintiff was not disabled but noted that they understated the severity of Plaintiff's mental symptoms because they were inconsistent with the regular notes of Plaintiff's treatment. (R. at 578.) Conversely, the ALJ found the report by Dr. Mustaqueem Quazi overstated Plaintiff's physical limitations because it was inconsistent with the medical records Dr. Quazi prepared contemporaneously with Plaintiff's treatment and examinations. (R. at 579.)

Regardless, except as discussed below, Plaintiff does not contest the ALJ's determinations regarding the weight to be given to the medical opinions; instead, he essentially argues the absence of a controlling medical opinion precluded the ALJ from making an RFC determination. This is

3

incorrect. "[T]he ALJ is free to accept some, but not all, of a medical opinion." *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022); *see also Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007). He also is "not required to adopt the exact limitations set forth in the opinions [he] found persuasive," so long as "substantial evidence supported the RFC findings . . ." *Wyatt v. Kijakazi*, 2023 WL 6629761, at *1 (8th Cir. Oct. 12, 2023) (per curiam) (citing *Webster v. Kijakazi*, 19 F.4th 715, 719 (5th Cir. 2021) and *Krogmeier v. Barnhart*, 294 F.3d 1019, 1024 (8th Cir. 2002)). And significantly, he is not required to support the RFC finding with a specific medical opinion. *See Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013); *see also Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). The ALJ's extensive discussion of the evidence and medical opinions, (*see* R. at 571-82), demonstrates that the Record provided sufficient evidence (medical and otherwise) to permit the ALJ to formulate Plaintiff's RFC. *See Julin v. Colvin*, 826 F.3d 1082, 1089 (8th Cir. 2016); *Buford v. Colvin*, 824 F.3d 793, 797 (8th Cir. 2016).

**2. The ALJ's analysis of Plaintiff's fibromyalgia**

Plaintiff contends the ALJ erred when he discounted the severity of his fibromyalgia by relying on examinations that evaluated range of motion, joint swelling, gait, and other matters Plaintiff believes are irrelevant to the condition. This is not a fair reading of the ALJ's opinion.

The Court starts by observing that (1) the primary symptom of fibromyalgia is pain and (2) the mere fact that a claimant has fibromyalgia (or pain) does not entitle him to benefits. In addition, Plaintiff suffered from another pain-inducing condition, related to his back. While the ALJ did not list Plaintiff's back condition as a severe impairment, he was still obligated to consider its effects when ascertaining Plaintiff's RFC and was further required to consider all the relevant

4

medical and other evidence in the Record. *E.g.*, *Igo v. Colvin*, 839 F.3d 724, 730 (8th Cir. 2016); *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008).[1]

The ALJ occasionally discussed Plaintiff's "pain inducing" conditions together, but he did not specifically ascertain the severity of Plaintiff's fibromyalgia by relying on tests unrelated to that condition. Moreover, the ALJ was obligated to consider all the evidence in the Record. The Court discerns no error.

### 3. The ALJ's reliance on Plaintiff's daily activities

Plaintiff criticizes the role his daily activities played in the ALJ's formulation of the RFC, saying he overvalued Plaintiff's representations of his abilities on good days. The Eighth Circuit has "repeatedly held ... that 'the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work.'" *Baumgarten v. Chater*, 75 F.3d 366, 369 (8th Cir.1996) (quoting *Hogg v. Shalala*, 45 F.3d 276, 278 (8th Cir. 1995)). "To establish disability, [a plaintiff] need not prove that [his] pain precludes all productive activity and confines [him] to life in front of the television." *Id.* However, this does not mean that it is improper for the ALJ to consider a plaintiff's activities of daily living; in fact, the Eighth Circuit has also affirmed decisions in which a plaintiff's daily activities are inconsistent with his alleged limitations. *E.g.*, *Buckner v. Astrue*, 646 F.3d 549, 558-60 (8th Cir. 2011).

Thus, the ALJ did not err in discussing Plaintiff's daily activities. Moreover, only a minimal part of the ALJ's analysis was devoted to Plaintiff's daily activities, and those comments were used to bolster the ALJ's conclusion that Plaintiff is not disabled; they were not the sole

---

[1] In fact, as will be discussed, Plaintiff argues the ALJ did not properly assess his cervical impairment. In other words, he both (1) criticizes the ALJ's mention of records related to Plaintiff's spinal condition and (2) argues those records were insufficiently considered.

5

evidence that Plaintiff is more able than he claims. The ALJ relied, properly, much more heavily on regular evaluations of Plaintiff's conditions by his chiropractors and physicians. Therefore, this argument does not provide a basis for reconsideration.

### 4. The ALJ's analysis of Plaintiff's compliance with treatment

Plaintiff claims the ALJ improperly characterized Plaintiff as demonstrating a lack of compliance with treatment. An impairment cannot be considered disabling if a plaintiff fails to follow a treatment which would control his symptoms. *E.g.*, *Brown v. Barhart*, 390 F.3d 535, 540 (8th Cir. 2024). The ALJ noted that Plaintiff discontinued use of medications repeatedly, despite there being "no records . . . that [Plaintiff] had reported such complaints to medical personnel." (R. at 577.) Plaintiff claims that he discussed his issues with his medications with treatment providers, but he misconstrues the Record. Rather than discussing his intolerance with his doctors *before* discontinuing use of his medications, Plaintiff routinely quit using medications his doctors prescribed him and only later, often after experiencing a new spike in symptoms which would have been treated by the prescribed medications, informed his doctor that he had quit. (*E.g.*, R. at 345, 355, 544.) Further, Plaintiff's medical records do not show he consistently adhered to *any* treatment or medication, even the ones which he claimed were successful at controlling symptoms. His post-hoc explanations to his doctors were vague, often citing that he "could not tolerate" medication, (R. at 544), or that medication "made things worse," (R. at 355), without more detailed explanation of why he believed he could not take his prescribed medication. The Record does not conclusively demonstrate cooperative engagement with medicinal treatment; more importantly, it can fairly be interpreted as showing noncompliance, which can be validly taken as evidence of overstated or exaggerated limitations. *Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017).

6

The ALJ's findings (which, he pointed out, did not play a controlling role in his decision, (R. at 577)), are supported by substantial evidence in the Record as a whole.

### 5. The ALJ's evaluation of Plaintiff's cervical impairment

Plaintiff argues that the ALJ failed to consider Defendant's cervical impairment. However, the ALJ repeatedly discussed Plaintiff's issues with Plaintiff's spine and found they do not affect Plaintiff's movement or ability enough to merit a finding of disability. There is substantial foundation for this conclusion in the Record. While MRIs conducted on Plaintiff's back show disc herniation, mild stenosis, as well as "degenerative changes," they demonstrate that the spinal cord shows no signs of abnormalities, no high-grade canal stenosis, and only mild left foraminal narrowing. (R. at 552, 795.) Further, examinations of Plaintiff repeatedly revealed normal range of motion and no neurological deficits. (*E.g.*, R. at 504.) This evidence supports the ALJ's finding that Plaintiff's cervical issues are not disabling.

## B. Evaluation of Medical Opinions

Plaintiff argues the ALJ failed to consider all the factors set forth in 20 C.F.R. § 416.1520c(c) when evaluating the medical opinion. That regulation requires an ALJ to consider the following factors when evaluating a medical opinion: supportability, consistency, relationship with the claimant, the medical provider's specialization, and "other factors." Plaintiff specifically argues the ALJ did not address the opinions' supportability. (Doc. 8, p. 26.) The Court disagrees.

"Supportability" refers to the extent to which there is medical support for the opinion, 20 C.F.R. § 404.1520c(c), and while the ALJ never used the word "supportability," there is little doubt that he discussed the extent to which the medical opinions were supported. (*See* R. at 578-82.) The Court concludes the ALJ conducted the analysis required by the regulation.

7

### C. The VE's Testimony

Plaintiff alleges the ALJ improperly relied on the testimony of the VE because (1) the ALJ failed to reconcile the VE's testimony with the Dictionary of Occupational Titles (the "DOT"), and (2) the hypothetical given to the VE does not match the RFC. The Court disagrees with both points.

#### 1. Conflict between the VE's testimony and the DOT

Plaintiff contends the VE's testimony regarding the jobs he could perform conflicted with the DOT. "If there is an apparent unresolved conflict between VE testimony and the DOT, the ALJ must elicit a reasonable explanation for the conflict and resolve the conflict by determining if the explanation given by [VE] provides a basis for relying on the . . . testimony rather than on the DOT information." *Moore v. Colvin*, 769 F.3d 987, 989-90 (8th Cir. 2014) (cleaned up). At the same time, the DOT provides a list of "generic job descriptions that offer the approximate maximum requirements for each position, rather than their range," and the VE's function is to apply his or her expertise to fill in the gaps that are not covered by the DOT. *E.g.*, *Wheeler v. Apfel*, 224 F.3d 891, 897 (8th Cir. 2000).

Here the ALJ asked the VE to identify any conflicts between his testimony and the DOT, (R. at 613), and he identified none. Nonetheless, Plaintiff argues that "a primary component" of a housekeeper's duties involve "personal assistance," which conflicts with the RFC's restriction that he not "frequently work[ ] with the public." The Court does not agree that a housekeeper's "primary duties" involves interacting with the public. The DOT describes a housekeeper's duties as follows:

> Cleans rooms and halls in commercial establishments, such as hotels, restaurants, clubs, beauty parlors, and dormitories, performing any combination of following duties: Sorts, counts, folds, marks, or carries linens. Makes beds. Replenishes supplies, such as drinking glasses and writing supplies. Checks wraps and renders

> personal assistance to patrons. Moves furniture, hangs drapes, and rolls carpets. Performs other duties as described under CLEANER (any industry) I Master Title. May be designated according to type of establishment cleaned as Beauty Parlor Cleaner (personal ser.); Motel Cleaner (hotel & rest.); or according to area cleaned as Sleeping Room Cleaner (hotel & rest.).

There is no apparent conflict between these duties and a restriction that precludes *frequent* interaction with the public.

Plaintiff also points out the other two jobs the VE identified—marker and routing clerk—require level 2 reasoning, which demands that employees be able to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." Plaintiff argues that the DOT conflicts with the VE's recommendation because Plaintiff's RFC limits him to "simple and unskilled work which entails simple, routine, and repetitive tasks." (R. at 569). Plaintiff claims that the RFC specifies Plaintiff is incapable of detailed work, but this is not so; the ALJ found that while plaintiff "has non-exertional mental limitations which frequently [a]ffect his ability to concentrate upon complex or detailed tasks, . . . he remains capable of understanding, remembering, and carrying out job instructions associated with the work identified earlier." (R. at 569.) The Eighth Circuit has repeatedly held that "[t]here is no direct conflict between 'carrying out simple job instructions' for 'simple, routine and repetitive work activity,' as in the hypothetical, and the vocational expert's identification of occupations involving instructions that, while potentially detailed, are not complicated or intricate." *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010). Reversal is not warranted.

## III. CONCLUSION

For the reasons stated above, the Commissioner's final decision is **AFFIRMED**.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
**DATE**: November 12, 2025
UNITED STATES DISTRICT COURT